## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**IVÁN COLÓN PÉREZ**, *et al.*,
    Plaintiffs,

v.

**JAVIER RIVERA RÍOS**, *et al.*,
    Defendants.

Civil No. 19-1775 (CCC-BJM)

### <u>REPORT AND RECOMMENDATION</u>

Plaintiffs Iván Colón Pérez ("Colón"), Graciela Estarellas Sabater ("Estarellas"), their conjugal partnership, and Marisol Piquer Merino ("Piquer") (collectively "plaintiffs") brought this action against Javier Rivero Ríos ("Rivera"), individually and in his official capacity as the Puerto Rico Insurance Commissioner; his spouse, Jane Doe; their conjugal partnership; Wilma Rosario Rodriguez ("Rosario"), individually and in her official capacity as the Auxiliary Rehabilitator of Constellation Health, LLC ("Constellation"); her spouse, John Doe; and their conjugal partnership. Plaintiffs brought suit under 42 U.S.C § 1983 for alleged First Amendment and due process violations. Dkt. 35 ¶¶ 47–63 (henceforth "Am. Compl."). Plaintiffs moved for a preliminary injunction, Dkt. 2, and defendants opposed. Dkt. 19. Defendants then moved to dismiss for lack of subject matter jurisdiction and failure to state a claim. Dkt. 38; Fed. R. Civ. P. 12(b)(1), 12(b)(6). Plaintiffs opposed. Dkt. 48. This matter was referred to me for a report and recommendation. Dkt. 6, 43. I postponed further proceedings on the motion for preliminary injunction until the motion to dismiss could be resolved. Dkt. 28. For the reasons that follow, defendants' motion to dismiss should be **GRANTED IN PART** and **DENIED IN PART**.

### STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss for lack of subject matter jurisdiction. Courts are obligated to address questions of subject matter jurisdiction before the merits of a case. "[T]he party invoking the jurisdiction of a federal court carries the burden of proving its existence." *Johansen v. United States*, 506

F.3d 65, 68 (1st Cir. 2007) (citing *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995)). A challenge to subject matter jurisdiction may be facial—where a motion does not dispute the allegations in a complaint—or factual—where the motion disputes a complaint's subject matter allegations. *Torres-Negrón v. J & N Records, LLC*, 504 F.3d 151, 162 n.8 (1st Cir. 2007); *Valentín v. Hospital Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001); *Mercado Arocho v. United States*, 455 F. Supp. 2d 15, 18 (D.P.R. 2006); *Rivera de León v. Maxon Engineering Servs., Inc.*, 283 F. Supp. 2d 550, 554 (D.P.R. 2003). Under a facial challenge, "the court must consider all the allegations in the complaint as true, and will not look beyond the face of the complaint to determine jurisdiction." *Mercado Arocho*, 455 F. Supp. 2d at 18. Under a factual challenge, "the allegations have no presumptive truthfulness, and the court ... has discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Id.* at 18 (citations and quotations omitted). If the challenged facts would also decide the merits of the case, the court must use a summary judgment standard and dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Torres-Negrón*, 504 F.3d at 163 (citations and quotations omitted). If the challenged facts do not involve the merits of the case, then the court is free to consider evidence and decide the question of its subject matter jurisdiction over the case. *Id.*

When faced with a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court "accept[s] as true all well-pleaded facts alleged in the complaint and draws all reasonable inferences therefrom in the pleader's favor" to determine whether the complaint states a claim for which relief can be granted. *Santiago v. Puerto Rico*, 655 F.3d 61, 72 (1st Cir. 2011). These facts and inferences may be augmented "with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011).

Dismissal under Rule 12(b)(6) is inappropriate if the complaint provides "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ocasio-Hernandez v. Fornuno-Burset*, 640 F.3d 1, 11 (1st Cir. 2011) (quoting Fed. R. Civ. P. 8(a)(2)). "A short and plain statement needs only enough detail to provide a defendant with 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* at 12 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This requires that the complaint contain sufficient facts "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.*

In making this determination, courts employ a two-pronged approach, first by identifying and disregarding statements in the complaint that offer "legal conclusion[s] couched as . . . fact" or "[t]hreadbare recitals of the elements of action." *Twombly*, 550 U.S. at 555. All non-conclusory factual allegations are treated as true, "even if seemingly incredible." *Ocasio-Hernandez*, 640 F.3d at 12 (citing *Iqbal*, 556 U.S. at 680–681). If the complaint's properly pleaded factual content, read as a whole, "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged, the claim has facial plausibility." *Iqbal*, 556 U.S. at 677. Applying the plausibility standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 662.

## BACKGROUND

Unless otherwise specified, the following facts are drawn from the amended complaint and the documents submitted at Dockets 19 and 37.[1]

---

[1] I consider the exhibits at Docket 37 because these are attached to the amended complaint and are thus "properly considered part of the pleading 'for all purposes,' including Rule 12(b)(6)." *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008) (citations omitted). I consider the documents at Docket 19, which consist of four orders issued by the courts of the Commonwealth of Puerto Rico and a letter from the Center for Medicare and Medicaid Services ("CMS") terminating CMS's contract with Constellation, because parties do not dispute their authenticity. *See Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993).

Constellation is a limited liability company incorporated pursuant to the laws of the Commonwealth of Puerto Rico. Am. Compl. ¶ 13. Colón was its founder, president, and chief executive officer; his wife, Estarellas, its Director of the Providers Department; and Piquer, its chief financial officer. *Id.* ¶¶ 7–8, 12.

From 2016 to 2019, Constellation held a certificate of authority issued by the Puerto Rico Insurance Commissioner ("the Commissioner"), which permitted Constellation to operate as a health services insurer. *See id.* ¶¶ 25, 46. As an insurer in Puerto Rico, Constellation is subject to the laws of Puerto Rico governing the business of insurance. These permit the Commissioner to seek Constellation's rehabilitation for various reasons, including where the insurer is facing certain financial difficulties. *See* P.R. Laws Ann. tit. 26, § 4009. These also permit the Commissioner to seek Constellation's liquidation should Constellation become insolvent. *See* P.R. Laws Ann. tit. 26, § 4014(2).

On April 15, 2016, the former Commissioner (Defendant Rivera's predecessor) initiated proceedings in the Puerto Rico Court of First Instance to liquidate Constellation on the grounds that it was insolvent. Am. Compl. ¶ 18. Rather than grant the Commissioner's request to liquidate, the Puerto Rico court entered an order of rehabilitation dated April 29, 2016. *Id.* ¶ 19. That order appointed the Commissioner as Constellation's Rehabilitator and vested him with various powers over Constellation. *See* Dkt. 19-1 at 1–6. Namely, the order authorized the Commissioner to exercise all the powers of the directors, officers, staff, and managers of Constellation; vested title to all of Constellation's assets, property, contracts, and rights of action in the Commissioner; ordered the Commissioner to take immediate possession of all Constellation's assets and manage them under "the sole supervision" of the court; empowered the Commissioner to "take all measures that [he] may deem necessary or appropriate for reforming and revitalizing [Constellation]"; and granted the Commissioner "full power to direct and manage, hire and fire employees of [Constellation], subject to any contractual rights such

may have, and to intervene with the property and business of [Constellation]." *Id.* at 1–2, 6. That court also ordered Constellation and its officers to refrain from exercising Constellation's corporate powers and suspended the authority of Constellation's directors and officers, subject to the Commissioner's restoration thereof. *Id.* at 3, 6. The court also ordered the shareholders, directors, officers, and staff of Constellation to refrain from taking any action on Constellation's behalf without the Commissioner's prior authorization, "except with regard to action taken to raise [the] necessary … capital to overcome the level of compulsory control event." *Id.* Finally, the court established that all of Constellation's property was under the legal custody of the court and that the court would retain "sole jurisdiction" regarding any matter or claim related to Constellation. *Id.* at 4.

After entry of the rehabilitation order, the Commissioner named Rosario Constellation's Auxiliary Rehabilitator, a position she still holds. Am. Compl. ¶ 20. Acting with the authority granted by the rehabilitation order, Rosario and the Commissioner maintained Colón, Estarellas, and Piquer in their respective positions with Constellation but stripped them of authority to issue payments on Constellation's behalf. *Id.* ¶ 22. Rosario has maintained control over Constellation's assets since the rehabilitation process began. *Id.* ¶ 23.

Constellation continued doing business during the rehabilitation process. Until recently, Constellation held contracts with CMS, the federal agency that administers Medicare and other social programs. *Id.* ¶ 26. Those contracts are executed annually after a competitive bidding process and, in Puerto Rico, may only be performed by organizations that hold a certificate of authority issued by the Commissioner. *Id.*; *see* P.R. Laws Ann. tit. 26, § 1903. Constellation held such a certificate for fiscal years 2016-17, 2017-18, and 2018-19. Am. Compl. ¶ 25. To continue operating as a health services organization and to

maintain its contracts with CMS, Constellation's certificate needed to be renewed for fiscal year 2019-20. *Id.* ¶¶ 27–28.

On April 30, 2019, the Commissioner asked the Puerto Rico Court of First Instance to convert rehabilitation proceedings into liquidation proceedings. Dkt. 19-2 at 1. On June 7, the court entered a "Provisional Order of Liquidation" "to initiate a provisional liquidation procedure." Am. Compl. ¶ 20; Dkt. 19-2 at 25. The court called its order a temporary restraining order and explained that it would be in effect for ten days, unless extended for good cause. Dkt. 19-2 at 46. The court named the Commissioner as liquidator; ordered the Commissioner to take full possession of Constellation's assets; vested title to those assets in the Commissioner; granted the Commissioner power to contract on Constellation's behalf under new terms as needed to carry out the liquidation; and ordered the Commissioner to execute a "Mutual Termination Agreement" with CMS if necessary to permit CMS to cancel its contract with Constellation. *Id.* at 25–27. The court also ordered as follows: the shareholders, directors, and officers of Constellation could not exercise their corporate or business functions or engage in any effort on behalf of Constellation; Constellation could not exercise its corporate powers, except those necessary to permit the Commissioner to perform liquidation; Constellation would deliver its certificate of authority to the Commissioner, and if Constellation "should fail to do so, it will be considered to have done so as of the effective date of the Provisional Liquidation Order"; Constellation's contracts would be cancelled; Constellation would be dissolved; and the court would retain sole jurisdiction over all claims related to Constellation. *Id.* at 25, 27, 29–30, 37.

After entry of the provisional liquidation order, Rosario immediately began taking steps to liquidate Constellation's assets and dismissed all Constellation's employees, including Colón, Estarellas, and Piquer. Am. Compl. ¶ 31.

Colón subsequently criticized both Rosario and Commissioner Rivera, calling them "irresponsible," accusing them of handling Constellation's rehabilitation in bad faith, and suggesting that their actions could harm patients in need of prescription drugs. *See id.* ¶ 32; Dkt. 37-1 at 15, 20–21. His comments appeared in the press on June 8 and 10. *See id.*

On June 10, Constellation petitioned the Puerto Rico Court of Appeals, seeking review of the lower court's provisional order. Am. Compl. ¶ 31. The appellate court stayed the provisional order that afternoon. *Id.* ¶ 34. One hour later, Rosario sent emails to Colón, Estarellas, and Piquer, to which a letter containing the following sentence was attached: "You are hereby informed that, pursuant to the powers vested in the Commissioner of Insurance of Puerto Rico, as Rehabilitator of Constellation Health, LLC, we have decided to terminate your services effective immediately." *Id.* ¶ 36. Rivera was copied on at least two of those letters. *See* Dkt. 37-1 at 9, 11. Constellation's counsel sent an email to counsel for Rivera and Rosario to arrange for the employees of Constellation to return to their positions, given that the Puerto Rico Court of Appeals had stayed the June 7 liquidation order. Am. Compl. ¶ 35. Counsel for Rosario and Rivera responded, explaining that, although the majority of Constellation's employees could return to work, neither Colón, Estarellas, nor Piquer could return. *Id.* ¶ 37. Counsel for Constellation responded, seeking reconsideration of the decision to terminate plaintiffs from their positions and arguing that Colón, Estarellas, and Piquer were protected by the labor laws of Puerto Rico and that their termination constituted a cause of action for retaliation in violation of their First Amendment rights. *Id.* ¶¶ 38–39. Rosario and Rivera did not reinstate Colón, Estarellas, or Piquer. *Id.* ¶ 40.

On June 14, Rivera sent a letter to CMS informing CMS that he was unlikely to renew Constellation's certificate of authority. *Id.* ¶ 42. On June 21, Rosario executed a sworn statement submitted to CMS in which she stated that Constellation was placing "the lives and physical wellbeing of beneficiaries … in jeopardy and … [that] a health crisis

among the plan[']s enrollees has begun to materialize." *Id.* ¶ 43. On June 27, CMS notified Constellation that it would be cancelling their contracts, explaining that it had based its decision on Rosario's sworn statement and Rivera's letter. *Id.* ¶ 44.

Neither Rivera nor Rosario applied on Constellation's behalf to renew its certificate of authority for fiscal year 2019-20, without which Constellation cannot operate as a health insurer. *Id.* ¶¶ 29, 46. This was true even though Colón had prepared the request for renewal form, Piquer had prepared a check to pay the required fee, and those items had been delivered to Rosario on May 31. *Id.* ¶ 29.

On July 12, the Puerto Rico Court of Appeals noted that the lower court's order of liquidation was "of a provisional nature," informed parties that it saw no reason to disturb the lower court's provisional order, and lifted its prior stay on that order. Dkt. 19-3 at 14, 18. Accordingly, liquidation proceedings in the lower court continued. On September 19, the Court of First Instance held a hearing at which Rivera's counsel argued that the June 7 provisional order was final. Dkt. 37-2 at 8. The court corrected counsel, explaining that "the very order itself shows that it is provisional and that its period of effectiveness is for 10 days that can be extended for another 10 days for just cause." *Id.* The court further explained that "treating a Provisional Liquidation Order as a final order and limiting the rights of a party by denying said the opportunity to submit evidence in its favor will constitute a violation of the due process of law."[2] Dkt. 37-2 at 8.

Plaintiffs brought suit in this Court on August 13, seeking relief for alleged violations of their rights under the United States Constitution's Due Process Clause, the Speech and Petition Clauses of the First Amendment, and their counterparts in the Puerto Rico Constitution. Dkts. 1, 35.

---

[2] Plaintiffs also submitted a decision from the Puerto Rico Court of Appeals at Docket 47-1. As this document is in Spanish and plaintiffs have not provided this court with a certified English translation, I do not consider this document. *See United States v. Rivera-Rosario*, 300 F.3d 1, 7 n. 4 (1st Cir. 2002) ("[P]arties are required to translate all foreign language documents into English.").

## DISCUSSION

Defendants seek dismissal of this action on several grounds. They argue that plaintiffs lack standing to sue; the *Rooker-Feldman* doctrine bars plaintiffs' suit; defendants enjoy sovereign immunity, qualified immunity, and statutory immunity; and plaintiffs have failed to state a claim on which relief may be granted. I will first address defendants' jurisdictional arguments before considering whether plaintiffs have stated a claim, and if so, whether defendants are nonetheless immune from suit.

As a threshold matter, I consider plaintiffs' argument that defendants have launched a factual challenge to subject matter jurisdiction that would require application of the summary judgment standard. *See Torres-Negron*, 504 F.3d at 163 ("Where ... the jurisdictional issue and substantive claims are so intertwined the resolution of the jurisdictional question is dependent on factual issues going to the merits, the district court should employ the standard applicable to a motion for summary judgment.") (internal citations and quotations omitted). Plaintiffs correctly point out that parties disagree regarding whether the June 7 liquidation order entered by the Puerto Rico Court of First Instance was a final order. Defendants argue that this order was final, while Plaintiffs contend that it was provisional and the proceedings in the Puerto Rico courts remain ongoing. If the June 7 order were final and plaintiffs asked this court to review and reverse that final decision, the *Rooker-Feldman* doctrine could render this court without jurisdiction. *See Federación de Maestros de P.R. v. Junta de Relaciones del Trabajo de P.R.*, 410 F.3d 17, 24 (1st Cir. 2005). In other words, defendants have raised a factual challenge relevant to subject matter jurisdiction.

Where this is the case, the court must use a summary judgment standard, provided that the challenged facts would also decide the merits. *Torres-Negrón*, 504 F.3d at 163 (internal citation omitted). Here, however, the alleged due process and First Amendment violations are unrelated to the question of whether the June 7 order was final. Where, as

here, "the facts relevant to the jurisdictional inquiry are not intertwined with the merits of the plaintiff's claim," "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* Defendants have submitted no evidence suggesting that the June 7 court order was a final decision. Rather, the relevant documents before this Court all indicate that the June 7 order was provisional. The order itself is called a "Provisional Liquidation Order," and the Court of First Instance described the order as a temporary restraining order, which would be in effect for ten days, unless extended for good cause. Dkt. 19-2 at 1, 46. The July 12 review authored by the Puerto Rico Court of Appeals noted that the lower court's order was "of a provisional nature." Dkt. 19-3 at 14. And the Court of First Instance itself clarified that the order was provisional in a September 19 hearing. Dkt. 37-2 at 8. In the absence of any evidence to the contrary, I recommend finding that the June 7 liquidation order was provisional. The discussion of this Court's jurisdiction proceeds on this assumption.

**Standing**

Defendants first argue that plaintiffs' claims must be dismissed for lack of standing, contending that Constellation cannot sue because it no longer exists and that Colón, Estarellas, and Piquer cannot properly bring a derivative suit on Constellation's behalf. Plaintiffs respond that they have standing to sue because Constellation has suffered a due process-related injury, and they can properly bring a derivative suit. They further argue that Colón, Estarellas, and Piquer have standing to seek redress for the injuries they suffered when they were terminated from their employment.

"Standing is both a constitutional and a prudential limitation on federal jurisdiction." *Coggeshall v. Massachusetts Bd. of Registration of Psychologists*, 604 F.3d 658, 666 (1st Cir. 2010) (citing *N.H. Right to Life PAC v. Gardner*, 99 F.3d 8, 13 (1st Cir. 1996)). To satisfy constitutional standing requirements, a party seeking relief in federal court must show that she suffered an actual injury, which is fairly traceable to the

defendant's conduct, and redressable by a favorable judicial decision. *Id.* (*citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *N.H. Right to Life*, 99 F.3d at 13.). "The standing inquiry is both plaintiff-specific and claim-specific." *Pagán v. Calderon*, 448 F.3d 16, 28–29 (1st Cir. 2006).

> ### (a)    *Due Process*

To demonstrate that they have suffered an injury-in-fact for purposes of their due process claim, plaintiffs must show that they were deprived of a life, liberty, or property interest. *See Coggeshall*, 604 F.3d at 666. Plaintiffs base their due process claim on an assertion that Constellation holds a property interest in its certificate of authority, which authorizes Constellation to operate as a health insurer. *See* P.R. Laws Ann. tit. 26, § 1903(1). According to plaintiffs, the Commissioner deprived Constellation of due process of law because he declined to apply to renew Constellation's certificate on Constellation's behalf and did so without providing either notice or a hearing. Having failed to submit a renewal application, the Commissioner also effectively failed to renew Constellation's certificate, as his is the office charged with approving or denying such applications.

Property interests are "created and ... defined by existing rules or understandings that stem from an independent source such as state law." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972); *see also Falto de Roman v. Mun. Gov't of Mayaguez*, 267 F. Supp. 3d 357, 360 (D.P.R. 2016) (citing *Soto–Padro v. Pub. Bldgs. Auth.*, 675 F.3d 1, 8 (1st Cir. 2012) ("The U.S. Constitution 'does not create property interests.'"). To create a property interest, that independent source must give the purported property holder "a legitimate claim of entitlement" to some sort of benefit. *See Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005). That claim to entitlement must be legitimate—it must represent something more than "an abstract need or desire" or "unilateral expectation." *Roth*, 408 U.S. at 577.

To support their contention that Constellation had a property interest in the application for and renewal of its certificate, plaintiffs cite several cases supporting the

proposition that an individual in possession of a license holds a property interest in that license, and due process demands notice and hearing before that license may be revoked. *See Bell v. Burson*, 402 U.S. 535, 539 (1971) ("Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment."); *Bowlby v. City of Aberdeen, Miss*., 681 F.3d 215, 220 (5th Cir. 2012); *Guillemard-Ginorio v. Contreras-Gomez*, 490 F.3d 31, 40 (1st Cir. 2007) ("It has long been established that a state may not suspend a professional license without a pre-deprivation hearing."); *Guillemard-Ginorio v. Contreras Gomez*, 161 F. App'x 24, 28 (1st Cir. 2005); *Wells Fargo Armored Serv. Corp. v. Georgia Pub. Serv. Comm'n*, 547 F.2d 938, 941 (5th Cir. 1977) ("Privileges, licenses, certificates, and franchises now do qualify as property interests for purposes of procedural due process."); *Jordan v. Silverman*, 294 F.2d 916, 918 (D.C. Cir. 1961) ("It is fundamental that an insurance agent's license, once issued and acted upon, may not be suspended or revoked without procedural and substantive due process of law."); *Ginorio v. Contreras*, 409 F. Supp. 2d 101, 107 (D.P.R. 2006); *Guillemard Gionorio v. Contreras Gomez*, 322 F. Supp. 2d 153, 162 (D.P.R. 2004) ("[P]laintiffs are entitled to a hearing before their licenses were revoked or suspended."); *Guillemard Gionorio v. Contreras Gomez*, 301 F. Supp. 2d 122, 132 (D.P.R. 2004); *Wayfield v. Town of Tisbury*, 925 F. Supp. 880, 885 (D. Mass. 1996) ("There is a distinction in the caselaw between plaintiffs who are applying for licenses and those who seek to bar the suspension or revocation of their licenses. Plaintiffs in the latter class, the already-licensed, have a vested property interest in the license, which forecloses denial without due process."). If Constellation had been in possession of a certificate that was revoked or suspended without prior notice or a hearing, this would be an easy case.

But Constellation's position with regard to its certificate is not so simple. Under Puerto Rico law, "no person may establish or operate a health services organization …

except as permitted by an authorization granted by the Commissioner." P.R. Laws Ann. tit. 26, § 1903(1). Those wishing to operate health services organizations must therefore apply to the Commissioner for a certificate of authority. *See id.* §§ 1903(3), 1904. Once issued, all certificates "shall continue to be in effect until their expiration." *Id.* § 1928. Constellation possessed a certificate of authority for fiscal years 2016-17, 2017-18, and 2018-19. During that time, the Puerto Rico Court of First Instance ordered Constellation rehabilitated and appointed the Commissioner as Rehabilitator. The court ordered Constellation and its officers to refrain from exercising Constellation's corporate powers, suspended the authority of Constellation's directors and officers, and ordered the shareholders, directors, officers, and staff of Constellation to refrain from taking any action on Constellation's behalf without the Commissioner's prior authorization, "except with regard to action taken to raise [the] necessary … capital to overcome the level of compulsory control event." Dkt. 19-1 at 3, 6. The court also authorized the Commissioner to exercise all the powers of the directors, officers, staff, and managers of Constellation; vested title to all of Constellation's assets, property, contracts, and rights of action in the Commissioner; ordered the Commissioner to take immediate possession of all Constellation's assets and manage them under "the sole supervision" of the court; empowered the Commissioner to "take all measures that [he] may deem necessary or appropriate for reforming and revitalizing [Constellation.]"; and granted the Commissioner "full power to … intervene with the property and business of [Constellation]." *Id.* at 1–2. Finally, the court established that all of Constellation's property was under the legal custody of the court. *Id.* at 4. Given the rehabilitation order, when it came time to apply to renew Constellation's certificate for fiscal year 2019-20, the Commissioner and his designees alone had the power to decide whether to submit an application. Unlike the plaintiffs in the *Guillemard* litigation, Constellation did not possess an insurance license that was revoked without notice or a hearing. Rather, Constellation held a certificate, and

its directors hoped that certificate would be renewed. But the powers of its directors had been suspended and the decision to apply for renewal committed, by court order, to the Commissioner. The notion that Constellation retained a legitimate claim to entitlement to having the Commissioner apply to renew its certificate under these circumstances is, at best, tenuous.[3]

Even if, arguendo, Constellation had some property interest to protect, the only legal person who suffered harm as a result of the Commissioner's failure to provide notice and a hearing was Constellation itself. Constellation, however, is not a plaintiff in this case. Constellation is a limited liability company whose very existence depends on the laws of the Commonwealth of Puerto Rico. Indeed, limited liability companies, like corporations, "are creatures of state law," and "it is state law which is the font" of a corporate entity's power. *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 98–99 (1991) (citing *Burks v. Lasker*, 441 U.S. 471, 478 (1979). Currently, pursuant to both the Puerto Rico Court of First Instance's prior rehabilitation order and its later provisional liquidation order, Constellation is only permitted to act as a legal person where so authorized by the Commissioner. *See* Dkt. 19-1 at 6; Dkt. 19-2 at 25, 27, 29-30; *see also* P.R. Laws Ann. tit. 26, §§ 4010, 4011. Plaintiffs have not alleged that the Commissioner has authorized Constellation to bring suit. As such, Constellation cannot be deemed a plaintiff.[4]

---

[3] In other words, the law determining whether Constellation had any property interest in the renewal of its certificate under these circumstance is unclear. Accordingly, even if plaintiffs had standing to bring a due process claim, defendants would be protected by qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.").

[4] Plaintiffs make much of the fact that, when the Court of First Instance ordered Constellation dissolved on June 7, the order it entered was provisional. Plaintiffs are correct. However, plaintiffs overlook the rehabilitation order dated April 29, 2016 and its relevance to the instant litigation. That order vests the Commissioner with all of Constellation's corporate powers and forbids the shareholders, directors, and officers of Constellation from acting on Constellation's

For the due process claim to proceed, therefore, one of the individual plaintiffs must have standing to sue on Constellation's behalf. However, a "plaintiff ordinarily 'must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" *N.H. Right to Life*, 99 F.3d at 15 (citing *Warth v. Seldin*, 422 U.S. 490, 499 (1975). There are some circumstances under which a litigant may assert the rights of a third party, although the limitations of such suits are "harder to classify." *Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 572 U.S. 118, 127 (2014). However, plaintiffs have not shown that third party standing should be permitted here.

Colón, Estarellas, and their conjugal partnership argue that they should be able to assert Constellation's due process rights because they own a 5.765 percent membership in Constellation. "As a general rule, a corporation and its shareholders are distinct juridical persons and are treated as such in contemplation of law." *Págan*, 448 F.3d at 28 (citing *In re Dein Host, Inc.*, 835 F.2d 402, 405 (1st Cir. 1987)). Thus, "[a]ctions to enforce corporate rights or redress injuries to [a] corporation cannot be maintained by a stockholder in his own name ... even though the injury to the corporation may incidentally result in the depreciation or destruction of the value of the stock." *Dein*, 835 F.2d at 405; *see also TC Investments, Corp. v. Becker*, 733 F. Supp. 2d 266, 282 (D.P.R. 2010) (citing *Págan*, 448 F.3d at 29) ("Shareholders lack 'standing to sue in their personal capacities unless the alleged misconduct causes harm to them separate and distinct from the injury inflicted upon the debtor corporation.'"). The only due process-related harm that plaintiffs have alleged applies to Constellation. Any harm to plaintiffs, i.e. the decreased profits resulting from Constellation's inability to conduct business that requires a certificate, is a direct result of the injury to Constellation. Accordingly, if the due process claim is to stand, it must be

---

behalf without the Commissioner's authorization. *See* Dkt. 19-1 at 3, 6; P.R. Laws Ann. tit. 26, § 4011(2). In short, under Puerto Rico law, which defines Constellation as a legal entity, only the Commissioner or those acting with his authorization can bring a suit such as this one. Whether or not the June 7 order was provisional makes no difference to this analysis.

because Colón and Estarellas can sue derivatively. *See Bishay v. Am. Isuzu Motors, Inc*., 404 F.3d 491, 495 (1st Cir. 2005) ("[W]hen a corporation is injured, only the corporation, a receiver, or a stockholder suing derivatively in the corporation's name may sue to redress the injury.") (internal citations and quotations omitted) (emphasis added).

But plaintiffs may not sue derivatively here because they have fashioned their suit as an action under 42 U.S.C. § 1983. In the First Circuit, "actions under § 1983 are personal in the sense that the plaintiff must have himself suffered the alleged deprivation of constitutional or federal rights." *González-Droz v. González-Colón*, 717 F. Supp. 2d 196, 205–06 (D.P.R. 2010), *aff'd on other grounds*, 660 F.3d 1 (1st Cir. 2011) (citing cases) (internal quotations and citations omitted). Thus, "only the person toward whom the state action was directed, and not those incidentally affected, may maintain a section 1983 claim." *Ramirez-De Leon v. Mujica-Cotto*, 345 F. Supp. 2d 174, 181 (D.P.R. 2004) (internal citation and quotation omitted). Although Colón, Estarellas, and Piquer may have been incidentally affected by the alleged due process violation, they cannot "sue or recover for the deprivation of the civil rights of another." *Id.* at 181–182 (internal citation omitted).

Moreover, plaintiffs decline to address why this court should disregard entirely the Puerto Rico court order that forbids derivative suits. In its rehabilitation order, the Puerto Rico Court of First Instance expressly prohibited the shareholders of Constellation from taking any action on Constellation's behalf. *See* Dkt. 19-1 at 3. Principles of comity counsel against permitting a derivative suit in federal court that would render null and void an order by the Court of First Instance. *See Levin v. Commerce Energy, Inc*., 560 U.S. 413, 421 (2010) (explaining that "the comity doctrine counsels lower federal courts to resist engagement in certain cases," and that the doctrine reflects "a proper respect for state functions") (internal quotations and citations omitted); *Mitchum v. Foster*, 407 U.S. 225, 243 (1972) (noting that "principles of equity, comity, and federalism … must restrain a federal court" asked to interfere with state court proceedings); *R.R. Comm'n of Tex. v.*

*Pullman Co.*, 312 U.S. 496, 500 (1941) (federal courts must exercise discretion and "restrain their authority because of scrupulous regard for the rightful independence of the state governments") (internal citations and quotations omitted); *Miller Dress Factory Inc. of Puerto Rico v. Douglas*, 385 F. Supp. 874, 878 (D.P.R. 1974) (explaining that comity "relies on … the respect due by one Court towards another Court which has already asserted jurisdiction over a controversy").

Because no plaintiff here has standing to sue for the alleged due process violation, I recommend that plaintiffs' due process claim be dismissed.

### (b)    First Amendment

Plaintiffs' First Amendment claim, however, stands on a different foot. As explained above, Colón, Estarellas, and Piquer cannot sue on behalf of Constellation to vindicate its constitutional rights. *See González-Droz*, 717 F. Supp. 2d at 205–06. However, whereas Constellation was the only legal person injured by the alleged due process violation, Colón, Estarellas, and Piquer all claim direct injuries flowing from the alleged retaliation. Indeed, Colón, Estarellas, and Piquer all assert that they were terminated from their positions at Constellation, that Rivera and Rosario carried out that termination, and that this court could redress their injury through, among other requested remedies, a declaration and money damages.[5] They have thus alleged an injury, fairly traceable to defendants' conduct, and redressable by a favorable judicial decision.

### *Rooker-Feldman* Doctrine

Next, defendants argue that this court lacks subject matter jurisdiction based on the *Rooker-Feldman* doctrine, which bars "federal complaints ... [that] essentially invite[ ]

---

[5] I make no recommendation at this time regarding the availability of the injunction plaintiffs seek. Although individual plaintiffs have asked this Court to reinstate them to their positions at Constellation, this court doubts the availability of such a remedy given that Constellation has been provisionally ordered dissolved and may not exist by the time an injunction would issue. Nonetheless, for purposes of standing, plaintiffs' injuries could be redressed by a declaration and an award of money damages.

federal courts of first instance to review and reverse unfavorable state-court judgments."
*Federación de Maestros*, 410 F.3d at 24 (citing *Exxon Mobil v. Saudi Basic Industries
Corp.*, 544 U.S. 280, 282 (2005)); *see also Coggeshall,* 604 F.3d at 663. The doctrine
applies where state court proceedings have ended and four requirements are met: (1) the
party who lost in state court brings the federal complaint; (2) the federal plaintiff challenges
injuries caused by state court judgments; (3) the state court judgment was rendered before
federal proceedings commenced; and (4) the federal plaintiff asks the district court to
review and reject the state court judgment. *Arroyo v. FDIC*, 961 F. Supp. 2d 386, 391
(D.P.R. 2013) (citing cases). Proceedings "end" in three circumstances: (1) "when the
highest state court in which review is available has affirmed the judgment below and
nothing is left to be resolved"; (2) "the state action has reached a point where neither party
seeks further action"; or (3) the federal plaintiff raises federal questions and "the state court
proceedings have finally resolved" those questions, even though "state law or purely
factual questions" remain. *Id.* at 24–25. The doctrine extends not only to claims adjudicated
by a state court but also to claims that are "inextricably intertwined" with a state court
adjudication. *Sheehan v. Marr*, 207 F.3d 35, 40 (1st Cir. 2000) (citing *D.C. Court of Appeals
v. Feldman*, 460 U.S. 462, 483 n.16 (1983)). "A federal claim is inextricably intertwined
with the state-court claims if the federal claim succeeds only to the extent that the state
court wrongly decided the issues before it." *Id.* (citing *Hill v. Town of Conway*, 193 F.3d
33, 39 (1st Cir.1999)) (internal quotations omitted).

The *Rooker-Feldman* doctrine is inapplicable to plaintiffs' claims because plaintiffs
do not complain of injuries caused by state court judgments. Although liquidation
proceedings in the Puerto Rico courts are ongoing, plaintiffs do not challenge any decision
made in those proceedings. Rather, they challenge actions by executive officials.
Specifically, plaintiffs argue that Rivera and Rosario's decision to terminate them from
their positions, failure to renew Constellation's certificate, and statements to CMS all

violated their constitutional rights. But the *Rooker-Feldman* doctrine "has no application to judicial review of executive action." *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 644 n.3 (2002).

Moreover, despite defendants' representation that "the state courts have already addressed and ruled on all the issues alleged in the Complaint," Dkt. 21 at 24, the Court of First Instance expressly stated that it would not decide any retaliation claims because such claims must "be brought in independent litigation." Dkt. 19-5 at 3; *see also id.* at 17–18. Rather than challenging the Puerto Rico court's determination, plaintiffs here have abided by that court's admonition by bringing the instant, independent litigation.

For these reasons, the *Rooker-Feldman* doctrine does not prevent this Court from hearing plaintiffs' complaint.

**Rule 12(b)(6) Motion to Dismiss**

Defendants next move to dismiss plaintiffs' claims for failure to state a claim. Because I find that plaintiffs lack standing to bring their due process claim, I address only defendants' argument as it relates to plaintiffs' First Amendment claim.

Plaintiffs allege that defendants, acting under color of state law, infringed their First Amendment rights, in violation of 42 U.S.C. § 1983. "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). To state a claim under section 1983, a plaintiff must first allege that defendant engaged in "official conduct, that is, an act or omission undertaken under color of state law." *Rogan v. City of Bos.*, 267 F.3d 24, 27 (1st Cir. 2001). Here, there is no question that Rivera and Rosario were acting under color of state law when they discharged plaintiffs from their positions at Constellation, as their authority to so discharge plaintiffs existed solely by virtue of their respective positions as Constellation's Rehabilitator and Auxiliary Rehabilitator.

Next, plaintiffs must allege that the defendants' conduct "caused a constitutional injury." *Id.* Because plaintiffs Colón, Estarellas, and Piquer each individually allege that their First Amendment rights were violated, I will examine each plaintiffs' claim separately.

Colón alleges that Rivera and Rosario retaliated against him after he made negative comments about them in the press. "As a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)) (internal quotations omitted). To state a claim for unconstitutional retaliation, Colón must allege that he engaged in constitutionally protected conduct and that a government official took adverse action against him because of that conduct. *Id.* at 1722; *see also Maloy v. Ballori-Lage*, 744 F.3d 250, 252 (1st Cir. 2014). "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must cause the injury." *Nieves*, 139 S. Ct. at 1722.

Colón's allegations are clearly adequate, if believed, to show that he engaged in constitutionally protected activity. On June 7, 2019, at the request of Rivera and Rosario, the Puerto Rico Court of First Instance provisionally ordered Constellation liquidated. Colón, Constellation's president, subsequently criticized both Rivera and Rosario, calling them "irresponsible," accusing them of handling Constellation's rehabilitation in bad faith, and suggesting that their actions could harm patients in need of prescription drugs. *See* Dkt. 37-1 at 15, 20–21. His comments appeared in the press on June 8 and June 10. *See id.* In criticizing government officials and permitting the press to publish those criticisms, Colón engaged in "a quintessential exercise of the right[] to speak freely." *Maloy*, 744 F.3d at 252; *see also Pickering v. Board of Ed.*, 391 U.S. 563, 573 (1968) (explaining that "the core value of the Free Speech Clause" is the "public interest in having free and unhindered debate on matters of public importance").

His allegations also permit a reasonable inference that Colón's public criticisms caused Rivera and Rosario to take adverse action against him. On June 10, two days after his criticisms first appeared in the press, Colón received a letter containing the following sentence: "You are hereby informed that, pursuant to the powers vested in the Commissioner of Insurance of Puerto Rico, as Rehabilitator of Constellation Health, LLC, we have decided to terminate your services effective immediately." Dkt. 37-1 at 9. Additionally, on June 14, Rivera sent a letter to CMS informing CMS that he was unlikely to renew Constellation's certificate of authority. Am. Compl. ¶ 42. And on June 21, Rosario executed a sworn statement submitted to CMS in which she stated that Constellation was placing "the lives and physical wellbeing of beneficiaries … in jeopardy and … [that] a health crisis among the plan[']s enrollees has begun to materialize." *Id.* ¶ 43. On June 27, CMS notified Constellation that it would be cancelling their contracts, explaining that it had based its decision, in part, on Rosario's sworn statement and Rivera's letter. *Id.* ¶ 44. Further, neither Rosario nor Rivera sought to renew Constellation's certificate of authority, without which Constellation cannot do business as a healthcare management organization. *Id.* ¶ 46. If true, these acts clearly adversely impacted Colón, the former president of Constellation. Moreover, this court can reasonably infer that, in engaging in conduct adverse to Colón, Rivera and Rosario acted with retaliatory animus, and that but-for Colón's public criticisms, they would not have engaged in the same conduct. This is so because all the adverse actions followed shortly after Colón issued his public criticisms. *See Cooper v. Charter Commc'ns Entertainments I, LLC*, 760 F.3d 103, 106 (1st Cir. 2014) (on a motion to dismiss, court draws "all reasonable inferences in the plaintiff's favor"); *see also Grajales v. Puerto Rico Ports Auth.*, 682 F.3d 40, 49 (1st Cir. 2012) (citing *Anthony v. Sundlun*, 952 F.2d 603, 605 (1st Cir.1991)) ("When a protean issue such as an actor's motive or intent is at stake, telltale clues may be gathered from the circumstances surrounding the adverse … action.") (internal quotations omitted). Although defendants

might argue that they would have engaged in the same conduct even absent Colón's public criticisms, such an argument is to be developed later and not on a motion to dismiss. *See Maloy*, 744 F.3d at 252–53 (citing *Garnier v. Rodríguez*, 506 F.3d 22, 27 (1st Cir. 2007)) ("Typically … an assessment of a plaintiff's complaint does not entail consideration—much less require rebuttal—of the defendant's explanation for its action."); *Grajales*, 682 F.3d at 49 (explaining that because "'smoking gun' proof of [unconstitutional retaliation] is rarely available, especially at the pleading stage," the court requires only "telltale clues" "gathered from the circumstances surrounding the adverse … action"). As such, Colón has alleged facts sufficient to state a First Amendment retaliation claim.

In contrast, Estarellas and Piquer have not alleged that they personally engaged in any constitutionally protected activity. Rather, the complaint refers only to the constitutionally protected activities of Colón and Constellation. In addition to alleging that Colón engaged in protected speech, the complaint explains that Constellation exercised its right to petition by appealing the Court of First Instance's provisional liquidation order to the Puerto Rico Court of Appeals. Undoubtedly, "the right of access to courts for redress of wrongs is an aspect of the First Amendment right to petition the government." *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 387 (2011) (quoting *Sure–Tan, Inc. v. NLRB*, 467 U.S. 883, 896–897 (1984)) (internal quotations omitted). However, the complaint only states that Constellation petitioned the appeals court without alleging that Piquer and Estarellas were involved in that petition. Piquer does not allege that, as Constellation's Chief Financial Officer, Rivera and Rosario somehow conflated Constellation's acts with his own. Nor does Estarellas, as Constellation's Director of the Provider's Department, make such a claim. Nor does she argue that her husband's speech acts are somehow conflated with her own. Nor do Estarellas and Piquer argue that their association rights are implicated by Rivera and Rosario's conduct. *See URI Student Senate v. Town of Narragansett*, 631 F.3d 1, 12–13 (1st Cir. 2011) ("freedom of association" protects "(i)

choices to enter into and maintain certain intimate human relationships and (ii) association for the purpose of engaging in those activities protected by the First Amendment.") (internal citation and quotations omitted). Because they have neither alleged that they engaged in constitutionally protected activities nor that they were somehow connected to Colón's comments or Constellation's petition, Estarellas and Piquer have failed to state a claim for First Amendment retaliation.

Accordingly, I recommend the court permit Colón to pursue his First Amendment claim and dismiss the First Amendment claims brought by Estarellas and Piquer.

**Sovereign Immunity**

Defendants also seek dismissal based on sovereign immunity. "Generally speaking, the Eleventh Amendment 'bars suits in federal courts against unconsenting states,' as well as 'official capacity suits against state hierarchs.'" *Municipality of San Sebastian v. Puerto Rico*, 116 F. Supp. 3d 49, 54 (D.P.R. 2015) (citing *Rosie D. ex rel. John D. v. Swift*, 310 F.3d 230, 234 (1st Cir. 2002)).[6] This proscription aims to protect a state's treasury and dignitary interests. *See Vaqueria Tres Monjitas, Inc. v. Pagán*, 748 F.3d 21, 27 (1st Cir. 2014). Under the *Ex Parte Young* doctrine, however, a plaintiff may bring suit "against state officers in their official capacities to compel them to comply with federal law." *Vaqueria Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 478 (1st Cir. 2009). "Such suits, however, may only seek prospective injunctive or declaratory relief; they may not seek retroactive monetary damages or equitable restitution." *Id.* (citing *Edelman v. Jordan*, 415 U.S. 651, 664–65 (1974)).

Here, plaintiffs have sued Rivera and Rosario in their official capacities for injunctive and declaratory relief and in their individual capacities for declaratory relief,

---

[6] Puerto Rico is considered a "state" for Eleventh Amendment purposes. *See Arecibo Cmty. Health Care, Inc. v. Puerto Rico*, 270 F.3d 17, 21 n. 3 (1st Cir.2001); *Ramirez v. P.R. Fire Serv.*, 715 F.2d 694, 697 (1st Cir. 1983).

injunctive relief, and monetary damages. As such, the doctrine of sovereign immunity does not bar suit against Rivera and Rosario in their official capacities. Rather, such suit is permitted under the *Ex Parte Young* doctrine.

**Qualified Immunity**

Defendants next argue that they are protected by qualified immunity, urging that plaintiffs have not alleged a constitutional violation and that, alternatively, the law surrounding any violation is unclear.

"[O]fficers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *Pagán-González v. Moreno*, 919 F.3d 582, 590 (1st Cir. 2019) (citing *Dist. of Columbia v. Wesby*, ––– U.S. ––––, 138 S.Ct. 577, 589 (2018). The doctrine "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *MacDonald v. Town of Eastham*, 745 F.3d 8, 11 (1st Cir. 2014) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). But "qualified immunity does not shield public officials who, from an objective standpoint, should have known that their conduct was unlawful." *Id.* (quoting *Haley*, 657 F.3d at 47 (internal quotation marks omitted)).

There are two parts to the qualified immunity inquiry, which need not be approached sequentially. *Maldonado v. Fontanes*, 568 F.3d 263, 269–70 (1st Cir. 2009) (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)). "A court must decide: (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." *Id.* at 269 (citing *Pearson*, 555 U.S. at 232). "'Clearly established' means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *Wesby*, 138 S.Ct. at 589 (internal citations and quotations omitted). "In other words, existing law must have placed the constitutionality of the officer's conduct beyond debate." *Id.* (internal citations and

quotations omitted). For the court to determine that a constitutional right was clearly established, "there does not need to be a prior case with factually identical circumstances finding such a right." *Decotiis v. Whittemore*, 635 F.3d 22, 37 (1st Cir. 2011) (citing *Mosher v. Nelson*, 589 F.3d 488, 493 (1st Cir. 2009)). The overall "state of the law at the time" may provide a defendant with fair notice that his conduct is unconstitutional even though "notable factual differences may exist between prior cases and the circumstances at hand." *Id.* (quoting *Mosher*, 589 F.3d at 493) (internal quotations omitted).

     As explained above, Colón has sufficiently alleged violation of his First Amendment speech rights, having stated that Rivera and Rosario engaged in conduct adverse to him, including his termination, because he publicly criticized them. The alleged retaliation occurred in June 2019. At that time, the law clearly established that "the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Nieves*, 139 S. Ct. at 1722 (quoting *Hartman*, 547 U.S. at 256; *Lozman v. City of Riviera Beach, Fla.*, 138 S. Ct. 1945, 1949 (2018); *Hartman*, 547 U.S. at 256 (citing *Crawford–El v. Britton*, 523 U.S. 574, 588, n. 10 (1998)); *Crawford-El*, 523 U.S. at 592; *Mercado-Berrios v. Cancel-Alegria*, 611 F.3d 18, 25 (1st Cir. 2010) (quoting *Hartman*, 547 U.S. at 256) ("Official reprisal for protected speech offends the Constitution [because] it threatens to inhibit exercise of the protected right."); *see also Barton v. Clancy*, 632 F.3d 9, 30 (1st Cir. 2011) (citing *Rivera–Jiménez v. Pierluisi*, 362 F.3d 87, 94 (1st Cir. 2004) ("[E]ven 'relatively minor events' can give rise to liability for retaliation under § 1983."). There are situations where the law governing First Amendment retaliation claims becomes murky. *Nieves*, 139 S. Ct. at 1715. Such situations arise, for instance, where a plaintiff complains of retaliatory arrest or prosecution, *see id.* at 1723–25, or where a public employee brings a claim for retaliatory employment action, *see Barton v. Clancy*, 632 F.3d 9, 28 (1st Cir. 2011). But here, Colón presents a fairly

straightforward retaliation claim, alleging that government officials terminated his position as President of Constellation because he publicly criticized them.[7]

Additionally, given the specific factual allegations here, reasonable officials in defendants' position would have known that their conduct was unlawful. To put it bluntly, a reasonable official would have known that terminating Colón's private employment because he made negative comments in the press about that official would violate Colón's free speech rights. *See Crawford-El*, 523 at 592 (explaining that it "has long been clearly established" that "the First Amendment bars retaliation for protected speech"); *Mercado-Berrios*, 611 F.3d at 25 (quoting *Hartman*, 547 U.S. at 256) ("[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions ... for speaking out."); *see also Schneiderman v. United States*, 320 U.S. 118, 138 (1943) ("[I]f there is any principle of the Constitution that more imperatively calls for attachment than any other it is the principle of free thought—not free thought for those who agree with us but freedom for the thought that we hate.") (internal citation and quotations omitted). As such, defendants are not entitled to qualified immunity with regard to Colón's First Amendment claim.

**Statutory Immunity**

Defendants further assert that they are immune from suit based on two provisions of the Puerto Rico Insurance Code:

> There shall be no civil liability on the part of, and no cause of action of any nature shall arise against, the Commissioner or his/her representatives for any action or omission by them in the discharge of their powers and duties under this chapter.

---

[7] The law governing this case might be less clear were Colón in fact a public employee. However, defendants themselves admit that they and Colón were never in an employer/employee relationship. Dkt. 38 at 13. Moreover, although government officials had been appointed to oversee the rehabilitation of Constellation, such appointment did not convert Constellation into a public entity.

*Colón Pérez, et al. v. Rivera Ríos, et al.*, Civil No. 19-1775 (CCC-BJM)    27

P.R. Laws Ann. tit. 26, § 4007.

> Upon issuance of an order appointing a liquidator of a domestic insurer or of an
> alien insurer domiciled in Puerto Rico, no action at law shall be brought against the
> insurer or the liquidator, whether in Puerto Rico or elsewhere, nor shall an action
> of that nature be maintained or entered after issuance of such order.

P.R. Laws Ann. tit. 26, § 4021(1); *see MRCo, Inc. v. Juarbe-Jimenez*, 521 F.3d 88, 94 (1st
Cir. 2008) (explaining that the widely disseminated translation of this provision is arguably
in error and that "no action at law" should read "no judicial action").

As laws of the Commonwealth of Puerto Rico, these statutes immunize defendants
from plaintiffs' claims insofar as they arise under Puerto Rico law. Indeed, plaintiffs make
no attempt to argue otherwise. However, with regard to plaintiffs' federal claims,
defendants' argument must fail. "Conduct by persons acting under color of state law which
is wrongful under 42 U.S.C. § 1983 or § 1985(3) cannot be immunized by state law."
*Martinez v. State of Cal*., 444 U.S. 277, 284 n.8 (1980). "A construction of the federal
statute which permitted a state immunity defense to have controlling effect would
transmute a basic guarantee into an illusory promise; and the supremacy clause of the
Constitution insures that the proper construction may be enforced." *Id.* Neither can Puerto
Rico, as a commonwealth, enact laws to immunize government officials from the U.S.
Constitution. *See Mora v. Mejias*, 206 F.2d 377, 382 (1st Cir. 1953) ("[T]he people of
Puerto Rico, who remain United States citizens, are entitled to invoke against the
Commonwealth of Puerto Rico the protection of the [U.S. Constitution]."); *see generally
United States v. Lebron-Caceres*, 157 F. Supp. 3d 80, 96–101 (D.P.R. 2016), *amended*, No.
CR 15-279 (PAD), 2016 WL 204447 (D.P.R. Jan. 15, 2016) (discussing the relationship of
federal law to Puerto Rico law).

**Motion for Preliminary Injunction**

Plaintiffs sought a preliminary injunction that would command defendants to renew Constellation's certificate of authority and reinstate plaintiffs as employees of Constellation. *See* Dkt. 2 at 3. They urged that such extraordinary relief was merited because they were likely to succeed on both their due process and First Amendment claims and because injury to business reputation and loss of First Amendment freedoms are both forms of irreparable harm. *Id.* at 6; *see Arborjet, Inc. v. Rainbow Treecare Sci. Advancements, Inc.*, 794 F.3d 168, 171 (1st Cir. 2015) (listing requirements for a preliminary injunction). Based on the foregoing discussion, I recommend finding as moot plaintiffs' motion with respect to all plaintiffs and claims, save Colón's First Amendment claim. I therefore recommend permitting proceedings for a preliminary injunction to continue only with respect to that claim.

## CONCLUSION

To sum up, defendants' motion to dismiss plaintiffs' due process claim should be granted because no plaintiff here has standing to bring that claim. Alternatively, if any plaintiff had standing to bring that claim, the law creating a property interest in the Commissioner's application for and renewal of Constellation's certificate is unclear, such that defendants would be entitled to qualified immunity. Plaintiffs' claims are not barred by the *Rooker-Feldman* doctrine because they challenge executive actions, rather than the decision of any court. Nonetheless, Estarellas and Piquer failed to state a First Amendment retaliation claim because they did not allege that they engaged in constitutionally protected activity. Colón, however, has sufficiently alleged a First Amendment retaliation claim. Finally, although statutory immunity immunizes defendants from claims arising under Puerto Rico law, neither sovereign immunity nor statutory immunity nor qualified immunity prevents Colón from proceeding with his federal First Amendment claim.

I therefore recommend that defendants' motion to dismiss be **GRANTED** with regard to the following claims: plaintiffs' due process claim, Estarellas's First Amendment claim, Piquer's First Amendment claim, and plaintiffs' claims under Puerto Rico law. I recommend that defendants' motion to dismiss be **DENIED** with regard to Colón's federal First Amendment claim. I also recommend finding plaintiffs' motion for preliminary injunction moot with respect to all plaintiffs and claims, except for the First Amendment claim brought by Colón.

This report and recommendation is filed pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be filed with the Clerk of Court **within fourteen days** of its receipt. Failure to file timely and specific objections to the report and recommendation is a waiver of the right to appellate review. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Davet v. Maccorone*, 973 F.2d 22, 30–31 (1st Cir. 1992); *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 991 (1st Cir. 1988); *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO RECOMMENDED.**
In San Juan, Puerto Rico, this 20th day of December 2019.

*S/ Bruce J. McGiverin*
BRUCE J. McGIVERIN
United States Magistrate Judge